Docket number 161285, In Re Starr. Appeal from the Trademark Triennial Appeal Board. Mr. Lee, do you want three minutes for rebuttal? That's correct, Your Honor. Just one second until everybody gets settled. Okay, you may begin. Good morning, Your Honors, and may it please the Court. My goal this morning is to convince Your Honors of three different things. That the Trademark Triennial Appeal Board and the examiner abused their discretion when they found that my client's... You argue that a cup is different than other forms of glasses, jugs, mugs, snifters, tumblers, etc. I argue that it is a specific type of drinking vessel in the same way that the item... If I walk into a 7-Eleven and ask them for a large cup size for a Slurpee, how does it look different than the vapor cup design? I wouldn't know, Your Honor, but that's not in the record. It wasn't provided by the examiner. And the examiner does have the burden of providing evidence that this is a purely, a merely descriptive mark. The examiner's primary evidence is a definition of cup that includes six qualifiers of which we meet only two. The Trademark Triennial Appeal Board, seemingly recognizing this unilaterally and without any evidence, rewrote that definition so that the definition of a cup then became a small drinking vessel. And even on that score, we only meet one of the two qualifiers as our product is not small. There is nothing in the record to justify referring to my client's product as a cup. Did you really make an argument, though, that the mark is merely suggestive? I didn't really see evidence in the record on that point. I made the argument that it is suggestive in the absence of any evidence that it in fact is merely descriptive. Again, that is the trademark examiner's obligation. He did not meet that obligation in providing evidence in the same way that he actively avoided referring to the VapoCup mark, which is evidence on the record that there is at least a difference of opinion on whether this mark is merely descriptive. And in the presence of that kind of a disagreement where reasonable examiners can disagree, well, a tie is supposed to go to the runner in that circumstance. And we should have been passed forward for publication, but we weren't. But again, the Trademark Trial Appeal Board made an argument similar to that you just made, Your Honor. You didn't make an argument, Counselor. Well, I'm sorry. The point that you raised about going into 7-Eleven. I'm looking at figure one in page seven of the red brief. Oh, the red brief? It's figure one from the patent. Oh, from the patent application? Yes. That is what our item looks like. What's that top thing coming out? It is a cover. Oh, that comes out of the top of it? Yeah. It is a straw. But again, the trademark examiner has to define what he does based on the evidence he provides. The Trademark Trial and Appeal Board said, well, we can make the decision based on our own experience of the marketplace. But that's completely arbitrary. It can't be rebutted. It can't be argued with. It can't even be discussed. And in this case, the evidence does not support the finding that was put forward. The other issue before this court, or one of the other issues, is whether or not my client responded to the questions put forward by the examiner. And it is our position that, one, that we did. And two, and I want to make this point because it was omitted from our brief, that both the AOP case and the Cheese Warehouse case, which are cited not only by the examiner but by the TTAB and by the Trademark Manual of Examiner Practices, stand for the position not only that you would reject something like this if the material is left out from the examiner and also from the briefs. Both those cases specifically mention that the wrong that was done was that the applicant refused to respond to the examiner or address the issue in their briefs. How do you deal with the examiner's notation that STARS Counsel, I don't know who that was below, that STARS Counsel, whoever that was below, stated then that you stated that the goods, quote, bear, quote, a physical resemblance to a cup? As we state in our brief, Your Honor, that was inartful writing. It was misstated by me using the examiner's language. It was an error. It stated in the record that it was an error. It is not, certainly not evidence, and it flies in the face of everything else that we said in our briefs. You might call it an error, but some others might call it an admission. And how is an admission not evidence? Well, Your Honor, to the extent that it might be considered an admission, I certainly understand how it could. It was, for lack of a better term, withdrawn in our papers as we do not believe that it is. It was said inartfully and unfortunately in haste. But you advertise this thing as having a coffee mug design. And a mug is not a cup. Well, you know, people refer to coffee cups and coffee mugs as the same all the time. Do they not? Not in my awareness, and there's certainly nothing in the record that says that. Again, Your Honor, this has to be decided on the record. That is before the Trademark Trial Appeal Board and now before Your Honors. And you're saying that you have no obligation at all with respect to the creation of that record? Well, of course we do. Because you're saying it's not descriptive, it's suggestive, right? Correct. Because it's got to be one or the other. But you didn't put any evidence to indicate that it's merely suggestive. You conceded that what comes out of the cup, what's delivered, is vapor, right? Yes, absolutely. Or comes out of the mug, I guess, as you want to call it. Well, out of the container is how we refer to it. Okay. But you refer to the container as a mug design. Yes. But a mug, again, a mug is not a cup as such. It meets some of the criteria, but if the examiner believed that a mug, and again, he identified as such, if the examiner believed that a mug and cup were synonymous, and therefore we were merely descriptive, the examiner certainly was within their ability to put that information forward and provide evidence on that score. In the absence of evidence that is merely descriptive, or worse yet, generic, then we are at worst suggestive. Can I just ask you something? Look at pages 109 to 111 of the Joint Appendix. The Yahoo search? The Yahoo search. The Yahoo search for cups with straws. Right. So quite a lot of the items here look like yours. So why is that not evidence that cup is descriptive of an item that looks like yours? Well, first, I will note that the TTAB did not rely on that. However, if you look through the list and I... I'm sorry. Where does this material come from? This is the examiner's search, I believe, of Yahoo for the descriptive terms cup and straw. Right. But what do you mean the examiner didn't rely on it? No, I said the TTAB did not rely on it. Oh, I see. Just the TTAB. Yes. The examiner lists this. As material the examiner relied on. But it's not really discussed in his brief. That point aside, if you do look through this list, you will see that there are all numbers of items there. There are basketball-shaped items, football-shaped items, baseball-shaped items, and even something that I can't quite identify on page 111 that looks to be a series of drawers. I'm not quite sure why that's there. The point I lead up to here, Your Honor, is that we don't know what the Yahoo search engine does here. The examiner did not search for cup. He searched for cup and straw, which is a different search and is going to lead to a different result. And without knowing how we get to these results, at the very least this is very minor evidence. And as I say, it's not relied on by the TTAB, perhaps for that reason. Let me continue. On the issue of whether or not we responded to the examiner's questions, of which the TTAB makes quite a bit in their briefs, as I say, AOP and Cheese Warehouse both stand for the proposition that even if this information is delivered during the appeal process, it would still be considered and that would not be grounds for throwing the mark out. And I think everybody agrees that at least at that stage it was addressed. Well, you didn't answer the question, will the goods deliver vapor to the user, right? I believe we did, Your Honor. Well, your response was the device does not regulate or process vapor. But you just admitted to me a few minutes ago that, yes, it creates vapor and it delivers it through the straw. Well, even the definition that we use, I'm sorry, the description we used of our goods, vaporizing, I don't remember the exact phrase, but we used the term vapor about three or four times. I will note that that was submitted by my client without aid of counsel. But it could not be more clear, and the trademark office says the same thing, that it could not be more clear from the description that, in fact, it does produce vapor. We've never denied that. Okay, so you're conceding that what you get when you suck on the straw is vapor. Absolutely, Your Honor. So really then your only debate is whether it's a cup or a mug. Well, whether the mark itself is merely descriptive. Our belief is that the two words together create a compound mark that is not descriptive of the product. That having been said, yes, I believe our primary and strongest argument is that there is nothing in the record that defines my client's goods as being a cup. And, again, we have the VapoCup. But there is, whether you like it or not, one part, the Yahoo search you denigrate as best being slight, the other you categorize as an error. But whether you like it or not, there is evidence in the record. You can't say there isn't. But it has to be more than a mere scintilla of evidence, Your Honor. It has to be substantive evidence. I don't think anybody would say that the baseball-shaped item is a cup or the football-shaped item is a cup. Without knowing, again, how the algorithm works, we don't know how much value this search has. We could draw a Venn diagram if we had a blackboard, which would show that not all items, which are cups, have to look like your slurpy cup with straw sticking out. But it's certainly in that body of evidence. Well, as I prefer to put it, Your Honor, all cups are containers but not all containers are cups. For a compound mark, you have to have some new and unique commercial impression that's created from the combination of the two words. Correct. So what's the new and unique commercial impression that you claim is created? Well, it is our contention that the phrase VapoCup is, well, first off, it was when we created Unique, we were the first ones to ever use it. VaporCup. VaporCup with an R, yes. We were the first to apply, we were the first to use, that it creates an impression amongst the consumer of, I don't really know what this is. It may be, and again, this gets to the issue of whether it's descriptive or not. Why would a consumer purchase an item like that in that particular shape? Well, I'm not sure, I can't speak for all consumers, and I'm not sure how that plays into the application process. It is marketed for convenience, for confidentiality. Right, because somebody will think it's something else. Well, more that somebody won't think that it is something. But, again, that begs the question of what that something else is. I mean, we know that it looks like something. The only issue is, is that something, by definition, a cup? We know it's something. It's a container, it is a beverage container. But there is nothing in the record, oh, let me rephrase it. The definition of cup supplied by the examiner on which he relied does not define it as a cup, and the Trademark Trial and Appeal Board seemingly acknowledges that when they redefine it from a container with a flat bottom, an open top for holding beverages, et cetera, to basically a small container of beverage. There is no reason to take out all the descriptors unless they do realize that the examiner's definition does not meet the definition of our product. And, again, Examiner Brown, in looking at the VapoCup mark, had no qualms about the issue of merely descriptive. Well, that's because it was for a totally different purpose. Oh, no, that's not true, Your Honor. With all due respect, it is, in reality, it is exactly the same product. In the description, it is simply phrased differently. They refer to smoke, but even in the definition of vapor put forward by the examiner, smoke is a form of vapor. It is an item designed to produce vapor exactly the same way that my client's does. Okay, you're way into your rebuttal time. We'll give you two minutes for rebuttal. Thank you, Your Honor. I'm here for the government. Okay, let's begin where he left off. I mean, I get the argument that, you know, two different marks are two different marks and we shouldn't, you know, assume that how you rule on one is how you're going to rule on any other. But what is your explanation for why VapoCup gets treated differently than VaporCup? Good morning, and may it please the Court. Oh, yeah, you can do that. Well, for the reasons that we said in our brief, we think it's irrelevant how that application is treated, but we did offer reasons why it's different. Vapo is not the word vapor. So if there's evidence that those two are synonymous, then they should be treated the same. If there's not evidence that those two words, Vapo, is a known synonym or abbreviation for vapor, maybe they shouldn't be. But in preparation for this argument, I did go back and I looked at the prosecution history for the VapoCup application, and that is application number 8226640. And the office actions that the examining attorney issued there included similar things to what were issued to Mr. Starr here. She issued a request for information asking for product information about the goods there. So even, you know, the marks are different, the goods are not described the same, but the examining attorney was asking for product information there, and she also raised this potential likelihood of confusion refusal. The applicant came back saying, hey, I'd like to suspend pending the outcome of Mr. Starr's application. In the office action that was dated June 14, 2014, I'm sorry, June 26, 2014, the examining attorney maintained the information requirement. So that application is still under consideration. There is no reason to presume that the examining attorney, who's well aware of what's happening here, would not have an opportunity to consider descriptiveness when that application is resumed. So I don't think that there's any inconsistency. That's as good an answer as I've heard in a while. Thank you. Turning to the cup issue, which really does seem to be the basis for why Mr. Starr thinks that vapor cup does not really describe his goods, I would just like to respond to one point where he said that the Yahoo search was not relied on by the board. If you turn to page 248 of the board decision, it's right before the decision, they say, in summary, based upon the totality of the evidence of record, including any evidence not specifically discussed herein. So just because they didn't highlight that Yahoo search for cup and straw does not mean that they did not consider it evidence. It certainly is evidence to show consumers would perceive an object shaped the way Mr. Starr's is to be a cup. And that also seems to be a fundamental misconception that Mr. Starr has about descriptiveness. The shape of the product is a feature or characteristic of that product that can ground descriptiveness refusal. For descriptiveness, we're concerned about when consumers encounter the goods, is the mark going to tell them something about a feature or characteristic of the product? This court's predecessor, going back to 1938, I believe was the case, in In Re American Cyanamid, and that's at 99 F second 964, found that the word plank and the mark gypsum plank for slabs of incombustible material was merely descriptive of the form or shape of the goods. There's another case where stick and chapstick was merely descriptive of the shape or form of the goods. So the shape is what we're concerned about here. It doesn't have to function as a cup. It doesn't have to hold liquid. It's sufficient if consumers would, upon viewing Starr's goods in the marketplace, understand that cup describes the shape. But she intentionally confused to believe that someone is sipping a drink out of a straw rather than ingesting whatever it is one ingests using vapor. Correct. I mean, what about the argument that a mug is really different than a cup? I mean, even in the coffee world, at least my mother used to be appalled that we wanted to drink out of mugs because she thought it was much more polite to drink out of what was formed like a cup. Isn't there a distinction between mugs and cups? I don't think that there is, Your Honor. I think that those words, particularly in the coffee context, can be used interchangeably. But even if there is, again, it's not about are we meeting the semantic dictionary definition, which, by the way, does include a definition of being a cup-like object. That's pretty broad. So it doesn't have to have a handle. It doesn't have to hold liquid. It has to be a cup-like object. So I don't think that even if a mug might have different characteristics, here the record shows that the shape of Starr's goods would be perceived as being a cup. And as Your Honor pointed out, Mr. Starr did not put in any evidence of any incongruity or other meaning that these two words together mean other than their ordinary dictionary meaning. And as the board found, consumers would understand that it's a vaporizer that's shaped like a drinking cup that's going to produce vapor for inhalation. Can I ask you about the other issue here, which presumably doesn't matter if you're right about the merits, but what concrete difference is there between the information that they submitted and the kind of putting it in the right boxes information that the examiner appeared to demand? What was missing in the information to justify the idea that questions were not answered as opposed to questions were not answered by putting the answers under the right questions? Well, I think we only need to look at what Starr's initial response was to see that he did not answer the questions. There were 13 originally. There were six that were maintained. Where are you in the record? Oh, I'm sorry. I am actually looking at our red brief at page 10, which produces what's in the record at 850, 760, and also in the board opinion. Starr was instructed to directly answer questions and provide information. And the questions were very straightforward. Do the goods produce vapor? Even to that, as Judge O'Malley pointed out, he did not answer that yes or no question. The goods are not made of vapor and does not, as its primary function, contain vapor, is what he said. And then went on to say the device does not regulate or process vapor. So the examining attorney did not get a direct answer to that question there. And it's the kind of question that the TMEP instructs examining attorneys is an appropriate question to ask. Because, again, for descriptiveness, we're trying to figure out what are the nature of the goods? What are their features? What's the meaning of the mark in the component terms? What's the significance of the mark in the trade or industry? Let me just try to ask the question. Maybe it's just repeating myself. So I guess I'm interested in what information was missing as compared to – what information was missing? Because if there's no information that's missing that would be responsive to the questions, then we're talking about you didn't present the information in the right form, which is a much less substantial basis for denying relief. And I'm trying to understand if there's information missing. I do understand the distinction you're trying to make better now. Thank you. Because even as to the first point, the first sentence is, the product is a device which converts herbs into a form in which they may be inhaled. Jeez, were they inhaling it out of the straw? Is there any doubt about that? So what information is missing? Well, the information that's missing from the questions that he asked, he never responded with any kind of product information at all. So question three was asking for product information, and if the information was unavailable to submit similar documentations for goods of the same type, explaining how his would differ. The requirement there said that the information has to make clear how the goods operate, their features are, prospective customers and channels of trade. Started in saying he didn't have any information, and in fact, the examining attorney was able to find the website, which indicates the product information was available. He just didn't respond. And the same thing with the patent. He didn't respond to that question saying, oh, here, I have a design patent. He put, after his admission that he said the goods resemble a cup, he dropped a footnote saying, see the drawings from the design patent. The patent is not identified by an application number. The specification to the patent is not included. There's more to a design patent application than just the claims. He just plainly didn't provide the information. And the same is true for some of these other questions. He didn't say whether the words have any significance in the trade or industry. Can I just ask? I should know this, but was the design patent application, one or more of them included with the original trademark application? No. Okay. And so, I mean, here, the examining attorney and the board said this, and this is true, the point of this rule, 2.61B, and it's analogous to Rule 105 on the patent side, it's sort of like a discovery tool. It recognizes that the office needs information from the applicant who's in the best position to provide that information most cheaply and effectively to the office. And that's particularly true on the trademark side, where our mission is to register eligible trademarks, but we need the applicant's help in making that assessment. They created the mark. They know what their goods are. They know what their industry is. And this is an intent-to-use application, so it's the kind of situation where an examining attorney rightfully can ask these kinds of questions to try and figure out, hey, is there a refusal to be made here or not? And the applicant has an obligation to participate in that process and respond. Starr points in his reply brief to the Hyatt v. Dudas case, saying that we have to make out a prime occasion for refusal before he has to respond to an information requirement, and that is incorrect. The Hyatt case was not about a Rule 105 information requirement. It was about whether or not the PTO had made out a prime occasion case for lack of written description under 112, and whether or not the provision in the NPEP set out enough information there to shift the burden to the applicant to respond. But Starr fruits, which was about 105, and the office's authority and discretion under that rule, was specifically a situation where the examiner needed information from the applicant about their plant variety and any sales under it to determine if a rejection under 102B should have been made in the first place. So it's not at all the case that we have to make out a prime occasion case before we can ask the applicant for information. Sometimes we need it here, and in the case of an intent to use application, that is true. And so what I heard Mr. Starr's counsel saying earlier here is basically that he doesn't have to give us anything or participate or help the office to gather evidence, and that is not so. And unfortunately, a lot of trademark applicants share this same view. We do not have precedent from this court on Rule 2.61B. We have Starr fruits, which is great, but a lot of trademark lawyers don't read the patent precedent. So if the court is inclined to write, we would actually welcome guidance on the information requirement issue. The court has no further questions. Briefly, Your Honors. First, Judge O'Malley, I wish your mother had been our examiner on this matter. We might not be in front of the court today if you had been. I take issue with the statement that we did not provide information. As we said in our briefs, and I won't go through it all again, it is our belief that we provided answers to all questions, simply not to the examiner's satisfaction. The examiner and the TTAB have set forth that the information was needed to determine whether or not the mark was generic. The solution, as they set out in their briefs, to any information that they feel we did not supply is to judge that information against us. Even with that presumption against us, the examiner still did not find that we were a generic mark. And further, quoting from the Joint Stock Company vague case, nor does failure to respond to a 2.61B request require refusal to register on the basis where the nature of the requirement was to confirm what the record already showed. Again, based on the example that was given, we didn't respond to whether or not it produces favor. Well, we did offer to disclaim favor. The application says that what the product does is a vaporizer that vaporizes vaporizable parts of herbs and whatever. It's hard to see, and we have never argued that it doesn't produce favor. We believe, acknowledge that it does. It is hard to believe why the examiner felt the need to ask that as part of three separate questions. What about the reference to the design patent applications where you referred for a description to design patent applications, which I think, as I understand it, you didn't even provide the numbers for? We provided the drawings, which are the description, Your Honor. Those were provided to the examiner in response to the first office action. That's why they were in the record, which one of Your Honors cited earlier, because we had provided that to the examiner. In fact, my time is up. May I finish the thought? Yes. That was part of our response in that we had provided all the relevant aspects of the design patent, and there was nothing more to provide there, just as we had nothing more to provide on product information, which the examiner had everything there was. There was no additional information to provide the examiner that would have changed the outcome, that would have changed the examiner's view. Thank you, Your Honor. Okay. Thank you.